## DAVIS v. CARDUE.

1. ARREST—FRAUD.—Where the *facts* stated in an affidavit show no fraud or false representations in contracting a debt, but only subsequent evasions in avoiding payment, a case for arrest, under subd. 3 of section 200 of the Code, is not made out.

2. IBID.—IBID.—The expression by a debtor of an intention to leave the town in which he is working so soon as he receives payment for a building which he is constructing, does not show a purpose to dispose of his property with intent to defraud his creditors, under subd. 4 of section 200 of the Code.

3. IBID.—IBID.—Under the showing made by the affidavits in this case, an order of arrest, issued by the clerk of court, was properly vacated.

4. IBID.—IBID.—ADDITIONAL AFFIDAVITS.—On motion to vacate an order of arrest issued by the clerk, additional affidavits on behalf of plaintiff, served in advance of the hearing, can be considered only so far as they are in reply to defendant's affidavits.

5. APPEAL—EXCEPTION.—A point raised in argument on appeal cannot be considered, where not raised by exception nor sustained by the facts of the case.

Before KERSHAW, J., Florence, October, 1892.

Motion by F. P. Cardue to vacate an order of arrest obtained in an action brought against him by R. C. Commander, J. C. Davis, and J. J. Brown, trading as J. C. Davis & Co. The order of arrest by the clerk of court was based upon the following affidavit:

Personally appeared R. C. Commander, who, being duly sworn, says that he is a member of the firm of J. C. Davis & Co. That the defendant is justly indebted to said firm the sum of three hundred and ninety-nine dollars and 40–100 dollars, and that a cause of action exists against said defendant on part of plaintiffs by reason of said account, as will appear by sum-

mons and complaint hereto attached. The circumstances of contracting said account are as follows: at about the first day of June, A. D. 1892, the defendant, F. P. Cardue, agreed and contracted for lumber to be furnished by plaintiffs for the building of a dwelling and other houses for Mrs. Talbot, of the city of Florence, with whom he contracted to put up and finish a building or buildings in the city of Florence for about $1,600, to be paid by instalments as the building progressed, out of which instalments the defendant was to pay the said plaintiffs the amounts due for lumber furnished him up to that time. That plaintiffs furnished and delivered to said defendant the various amounts of lumber, as appears by the account attached to and a part of the complaint hereunto attached, but that defendant systematically and deliberately evaded meeting his contracts, as provided in his agreement, by representing that there was more money due him from Mrs. Talbot than was really due, which defendant knew to be untrue. That the defendant has nearly completed his contract with Mrs. Talbot; that plaintiffs have applied to the said Cardue and made every reasonable effort to effect a settlement, but all of which he has evaded, and refused to come to any proper arrangements; that the defendant has appointed time after time with plaintiffs to arrange said account, all of which appointments he has failed to meet except with frivolous excuses; that in disputing the account, he, together with plaintiff, selected S. Bounds, contractor, to decide as to the amount due, and upon his sealed decision being handed in, he, the said Cardue, refused arbitrarily to open said decision, and from his evasions and contentions this plaintiff believes and alleges that the defendant, in making said contract, did so with a fraudulent intent to deceive and disappoint them in his promise to comply with the said contract, and that he intends to collect balance due him by Mrs. Talbot and leave plaintiffs unpaid. The deponent has been informed by J. L. Farmer, the agent of Mrs. Talbot, that the said defendant told him that as soon as he got balance of his money for the building now nearly completed, he intended to leave the place. The deponent further states that the said F. P. Cardue, the defendant, has no visible means out of which

this debt can be enforced, and alleges, from the facts above set forth, and his statements to J. L. Farmer, that he intends to dispose of and remove his property and effects, with a view of defrauding his creditors, in that he intends to leave as soon as he collects balance due by Mrs. Talbot, about $400. Defendant further states, that from all he knows and believes, the amount due him by Mrs. Talbot, with some small amount lumber and tools, constitute about all the property he is possessed of.

Defendant served notice on September 2, of motion to vacate on September 7, with the following affidavits:

Personally appeared F. P. Cardue, who, being duly sworn, says, that he is the defendant in the above entitled cause, and was arrested on the 6th day of August, 1892, by an order in the said cause made by Z. T. Kershaw, clerk of the Court of Common Pleas of Florence County, State aforesaid, bearing date the 6th day of August, 1892, said order of arrest being based upon the affidavit of R. C. Commander, copies of which said affidavit and order were served with the summons and complaint in the above entitled action. Defendant further says, that he has carefully read the said affidavit of the said R. C. Commander, and he denies the correctness of each and every statement thereof, except as hereinafter admitted. Defendant admits that he was erecting buildings for Mrs. Talbot, as stated in said affidavit, for which he was to be paid the sum of sixteen hundred dollars, in instalments, according to the progress of the work; he also admits that he was to pay the firm of J. C. Davis & Co. for lumber and materials a certain sum of money in instalments, as the same was paid to this deponent by persons for whom he was working. This deponent denies that he evaded or postponed payment of any sum or sums justly due the said J. C. Davis & Co., under his contract with them, and alleges that all failures to settle with the said J. C. Davis & Co. grew out of differences between this deponent and the said J. C. Davis & Co. as to the amount justly due, and all failures to pay the said J. C. Davis & Co. their demands were expressly alleged by this deponent to be upon the grounds that the amounts claimed were not justly due; that in order to facilitate a settlement between deponent

and the said J. C. Davis & Co., the said parties agreed to refer their said differences to S. Bounds, a contractor and builder, living in the town of Florence, who was to determine the amount due the said J. C. Davis & Co. by the deponent, which said amount both of the contracting parties agreed should be held to be the amount justly due the said J. C. Davis & Co. by this deponent. That the said S. Bounds agreed to act as arbitrator for the said parties, and having investigated the same thereafter, viz., on Saturday, the 6th day of August, 1892, handed in a sealed report, stating that in consequence of the pressure of business, he had only made a partial investigation of the matter referred to him, and that he would be unable to make a full report until the following Monday. For the reason that the report was not complete, the deponent declined to open the same, at the same time expressing his willingness and intention to settle, as hereinafter stated, as soon as said report was complete. Deponent further says, that he has never had any intention whatever of leaving the town or State without having fully complied with all of his contracts. He has said, not only to Mr. J. L. Farmer, but, also, to various other persons, that he intended to leave the town of Florence as soon as he had completed his business there. That these statements were not made secretly or clandestinely, nor in any such manner nor connection as to lead any reasonable person to suppose that his purpose was to leave the State with intent to defraud his creditors. On the contrary, the deponent alleges that the frequency and publicity with which he made such statements would tend to negative the supposition that he intended to evade the just demands of his creditors, or elude the service of legal process.

Personally appeared J. L. Farmer, who, being duly sworn, says, that the remark attributed to him by the said R. C. Commander in his affidavit is approximately correct, but it was made under the following circumstances, viz: R. C. Commander inquired of the deponent (who is a brother-in-law of Mrs. Talbot, named in said affidavit of R. C. Commander, and known by said Commander so to be) if he knew when Mrs. Talbot would make the last payment to F. P. Cardue on account of

the buildings which he, the said Cardue, was then erecting for her. To this inquiry this deponent answered, that he supposed very soon, as the said Cardue had said to him that he intended to finish the work as soon as possible, as he wished, or intended, to leave the town as soon as he could get through with his business here. This statement was made to the said R. C. Commander in the course of a conversation in regard to the progress of the work made by Cardue upon the houses which he was erecting for Mrs. Talbot. The remark of the said F. P. Cardue to this deponent in regard to leaving the town, did not convey any impression whatever that the said Cardue intended to leave the place secretly, and without fulfilling his contracts; and in repeating the same to the said R. C. Commander, this deponent did not intend to convey any such impression; on the contrary, his purpose in repeating said remark to the said R. C. Commander was merely to show him that the said F. P. Cardue expected soon to receive his last payment from Mrs. Talbot, and would thus be enabled to pay the firm of J. C. Davis & Co. the amount due them by him.

Personally appeared S. Bounds, who, having been duly sworn, deposes and says, that a dispute having arisen between J. C. Davis & Co. and F. P. Cardue as to the amount due the said J. C. Davis & Co. by the said F. P. Cardue, at the request of the said parties, he acted as special referee, to determine and report upon the matter in dispute; that having made a partial investigation, this deponent, on Saturday, the 6th day of August, 1892, made a sealed report as far as he had investigated, stating to the parties that he would not be able to make a complete investigation or report until two days thereafter, viz., on the following Monday. That the said F. P. Cardue, upon hearing this statement, declined, in the presence of this deponent and J. C. Davis, to go into any settlement until a full report could be had upon all buildings, as no proper settlement could be had until the coming in of a full report.

This deponent further says, that, to the best of his recollection and belief, the said J. C. Davis was present when, a few moments afterwards, the said F. P. Cardue stated his willingness and intention to make a full settlement, in accordance

with the findings of this deponent, as soon as a full investigation and report could be made. The deponent further states, that at this interview between F. P. Cardue and J. C. Davis, he heard nothing, and saw nothing in the conduct of the said F. P. Cardue, which would indicate an unwillingness on the part of the said F. P. Cardue to settle his indebtedness with the said J. C. Davis & Co. in accordance with the terms agreed upon, viz., upon such terms as should be stated by the report to be made by this deponent.

On September 16, 1892, plaintiffs sent following affidavits of J. C. Davis, R. C. Commander, F. Viering, and S. Bounds, to be heard on the motion to vacate the order of arrest made by the clerk, with statement that if defendant wished to submit affidavits by way of rebuttal or rejoinder, they would not be objected to:

Personally came before the subscribing officer, J. C. Davis, one of the plaintiffs herein, who, being duly sworn, says: 1. That as one of the firm above named, he had dealings with the defendant, F. P. Cardue, in furnishing lumber and materials from the mill of these plaintiffs, in the city of Florence, and State aforesaid; that said firm furnished lumber for building to the said Cardue for building houses in said city for J. Thompson, Cook, Mrs. Talbot. 2. That the agreement with said Cardue was, as he was to receive instalments from Mrs. Talbot, he was to pay the said firm for the lumber furnished by them up to the time said instalments were paid; that instead of meeting his engagements as promised, he would occasionally pay a portion, as the statement of the account, as part of the complaint herein will show, he utterly failed to meet his obligations, even more than once appointing a time to come to the office to make payments, and on failing to do so evaded this deponent on the streets. That being postponed from time to time, he went to J. L. Farmer, the agent of Mrs. Talbot, to learn if what said Cardue told him was true as to the amount left in his hands on the contract, and that the amount was much less than what had been stated by defendant; and on finally applying to said Farmer, and intimating to him that said Cardue was acting so as if to defeat them in their claim,

the said Farmer told him "they had better look out for them-selves, as Cardue had told him that he intended to leave when paid for the buildings." That on or before the 6th August, deponent, with R. C. Commander, his partner, while pressing their claim, found that the said Cardue objected to their bill, as he alleged that he had not received the lumber charged. That upon this he and his partners agreed that Mr. S. Bounds should go to the buildings of Mrs. Talbot and make an estimate of the lumber therein, and they were to settle by said estimate, and Mr. Bounds went to the buildings and made the investi-gation, which on being done the said Cardue insisted that an estimate be made of the other buildings also, which Bounds said that he could not do till the next Monday. It was then agreed that the estimate be made on the *Talbot* buildings, which was agreed to, and Mr. Bounds took Mr. Hatchell with him to make the statement (said Hatchell being a workman with Car-due on said buildings). That Mr. Bounds gave a sealed state-ment to Cardue, which he refused to open or to settle on, and deponent says that on inquiring of Bounds why he thus evaded, he said to deponent that he supposed that Hatchell had told Cardue that the amount was more than he expected. Depo-nent further says, that the statement of Bounds has never yet been shown him, and that no statement has even been given by said Cardue, except the vague statements in his answer that he only owes some one hundred and forty-nine dollars. This deponent further avers that a portion of the lumber purchased of plaintiffs for the Talbot building was taken by defendant Cardue, and stacked in the yard of J. F. Stackley, and is still held by him, as admitted to this deponent by the said Cardue. Deponent further says, that he is informed by Chopsie S. Welsh, that said Cardue took other lumber gotten from these plaintiffs, and placed in premises of C. Bultmann, one of his bondsmen on the bail bond.

Personally appeared before the subscribing officer, R. C. Commander, who, on oath, says, that the facts set forth in his affidavit herein attached to the complaint herein, are true. That being desirous of closing the accounts for lumber furnished for the building of Mrs. Talbot's buildings, he appealed to

Cardue, defendant, for a settlement; that Cardue had told him that the balance in the hands of J. L. Farmer was some $700, and on application to said Farmer, he stated it to be less (some $400 to $500), and on urging a settlement, the said Cardue evaded the same by alleging that the charges for lumber were more than he had received; upon which it was agreed to refer the computation of the lumber in the said buildings to Mr. S. Bounds, a contractor and builder, in Florence, upon whose decision they were to abide, and the amount found due was to be paid deponent's firm. Deponent's firm proposed to said Cardue to give him a draft on Mrs. Talbot for the amount found to be furnished, and subject to the finding of Mr. Bounds, which he refused to do. Deponent then proposed to him to give him a draft for a *part* of the amount as appraised by Bounds; Cardue replied, he be —— if he would do it—when he got his money, he would put it in his pocket, and pay when he d—— pleased. Deponent further says, that in his conversation with J. L. Farmer, referred to in his affidavit attached to the complaint, that he was satisfied from that, and what he had said to his partner, J. C. Davis, that he, Cardue, *intended*, and had previously decided in making his contract, to defraud the plaintiffs herein, and that his whole conduct in the transaction is evidence of a fraud in making his contract for the lumber he got from plaintiffs, and depriving them of the payments which he agreed to make for the lumber received.

Personally came before the subscribing officer, F. Viering, who, being duly sworn, says, that the defendant, F. P. Cardue, whom he knew in Charleston, or had met there at various times, was doing work for some time at the mattress factory, under contract with J. P. Coffin, in the town of Florence, in which this deponent was interested as a partner during the present spring. That said Cardue proposed to board with deponent; said he could not get a settlement with Mr. Coffin, but would get work and pay him. That deponent went to North Carolina on business, and on his return ascertained that said Cardue had contracted with J. Thompson to build a house, and he, Cardue, proposed to deponent to join him, and said the way we can work it, is to get all the contracts we could, no matter

at what figure; that he could get all the material he wanted by the car load, and would take work to be paid by instalments; could get some money and pay along; that he would take as many contracts as he could get, and when he got a large sum from his instalments, he would leave; that so far as the lumber he could get, he would build deponent a two-story house, &c. Deponent knows that said Cardue did have several contracts— viz., with Thompson, Mrs. Talbot, and Cook—and told deponent he had made a contract with J. C. Davis & Co. for lumber, and wanted to make one with Carr, of Sumter. Deponent knows the fact, that said Cardue did get lumber from J. C. Davis & Co. for the buildings, and deponent received several loads himself from them under Cardue's orders while working at Thompson's house. Deponent, however, declined his offer of partnership, and is still at his legitimate business. That Cardue boarded with deponent about six weeks during his employment on the various works. That since the commencement of this action by J. C. Davis & Co., said Cardue told this deponent that so soon as he could get his money from Cook, he would get his lawyer to set aside the bond, and leave, and they could get judgment, and get what they could make out of it; that he could settle with Cook on any terms; said that the judgment would be worth nothing.

Personally came before the subscribing officer, S. Bounds, who, being duly sworn, says, that when called upon by J. C. Davis to make the estimates, he wished it for the Talbot buildings; when called upon by Cardue, he wished him to make the estimates for the two Talbot buildings and the Cook building; that he proceeded, on Satuaday, 6th of August last, to make the calculation, and ascertain the quantity. That J. C. Davis, one of the plaintiffs, was present with defendant Cardue, and Cardue insisted on a similar statement as to the other building (Cook's), for which J. C. Davis & Co. had furnished lumber. When deponent said he could not do that before Monday following, Cardue proposed to postpone the settlement until after the other estimates were made, to which J. C. Davis declined, and said he could not agree until seeing his partner Commander, and insisted that the estimates of the

Talbot buildings be made at once, which was agreed to, and this deponent, with Mr. Hatchell, one of the workmen with Mr. Cardue, who went with him to make the estimate, which was done, and the same were sealed and handed to Mr. Hatchell, to be handed to Cardue according to the agreement.

It does not appear when the hearing was had, but the order of Judge Kershaw bears date October 1, 1892.

*Mr. W. W. Harllee*, for appellant.

*Messrs. Dargan & Coggeshall*, contra.

March 18, 1893.   The opinion of the court was delivered by

MR. CHIEF JUSTICE McIVER. · The plaintiffs, having commenced their action to recover the sum of $399, alleged to be due by the defendant for lumber sold and delivered to him by the plaintiffs, applied for and obtained from the clerk of the Court of Common Pleas an order for the arrest of the defendant. The defendant having been arrested by virtue of said order, and having entered into bond as thereby required, gave notice of a motion based upon affidavits, copies of which accompanied the notice, as well as upon all the papers filed and served in the action, to vacate the order of arrest and for such further orders as may be just and proper.   The plaintiffs, before the time for hearing the motion arrived, served additional affidavits to be heard on the motion, with a "statement that, if defendant wished to submit affidavits by way of rebuttal or rejoinder, they would not be objected to."   The motion came on for a hearing before his honor, Judge Kershaw, when defendant objected to the additional affidavits served by the plaintiffs, in so far as they were not in reply to the facts stated in the affidavits served by defendant, and his honor granted the following order, which is copied precisely as it appears in the "Case," omitting the title of the cause: "On reading and filing notice of affidavits· of F. P. Cardue, J. L. Farmer, and S. Bounds, and on the pleadings and proceedings in this action, on motion of Dargan & Coggeshall, counsel for defendant, after hearing W. W. Harllee, Esq., for plaintiffs, ordered, that the order of

arrest granted by Z. T. Kershaw, clerk of the Court of Common Pleas, on the 6th day of August, 1892, against defendant, F. P. Cardue, be vacated, and that the bail heretofore given by defendant be exonerated from liability; and the plaintiffs do pay to the defendant the sum of —— dollars for the costs of this motion."

From this order plaintiffs appeal upon the following grounds: 1st. Because the allegations in the affidavit of R. C. Commander, one of the plaintiffs in the action, attached to the complaint, made out a *prima facie* case of fraud as alleged, and the clerk was not in error in making the order of arrest. 2d. Because the affidavits served by plaintiffs, and heard by the court in reply to those of defendant, were strictly in reply to those of the defendant, and stated no new matter or facts which could be objected to in establishing the fact of fraud, were competent for that purpose, and were sufficient to sustain the order of arrest. These grounds of appeal raise substantially two questions: 1st. Whether the affidavit of Commander, upon which alone the order of arrest was made, contained facts sufficient to justify the granting of the order. 2d. Whether the additional affidavits submitted by the plaintiffs were in reply to those upon which the notice of the motion to vacate was based.

To determine these questions, it will be necessary to inquire what facts are stated in the affidavits pertinent to the issues which we are called upon to determine. The affidavits are too long for insertion in this opinion, but copies of them should be incorporated in the report of the case; and we will not undertake here to make anything more than a very summary statement of the facts which may be supposed to relate to the question of fraud. First, as to the affidavit of Commander. That affidavit, stripped of all unnecessary details, simply amounts to this: that defendant obtained from plaintiffs lumber to the amount stated, under a promise to pay for the same out of money which he was to receive for building a house for Mrs. Talbot, in instalments as the work progressed; that defendant failed to comply with his agreement, representing that there was more money due him from Mrs. Talbot than was really due, which defendant knew to be untrue; that there being a

dispute as to the amount due plaintiffs by the defendant on the account for lumber, one S. Bounds, a contractor, was selected by the parties to decide as to the amount due, and upon his decision being handed in, the defendant refused to open said decision, "and from his evasions and contentions this plaintiff believes and alleges that the defendant, in making said contract, did so with a fraudulent intent to deceive and disappoint them in his promise to comply with the said contract, and that he intends to collect balance due him by Mrs. Talbot, and leave plaintiffs unpaid." Further, the affiant deposes, that he "has been informed by J. L. Farmer, the agent of Mrs. Talbot, that the said defendant told him that as soon as he got the balance of his money for the building, now nearly completed, he intended to leave the place. The deponent further states, that the said F. P. Cardue, the defendant, has no visible means out which this debt can be enforced, and alleges, from the facts above set forth, and his statements to J. L. Farmer that he intends to dispose of and remove his property and effects with a view of defrauding his creditors, in that he intends to leave as soon as he collects balance due by Mrs. Talbot, about $400. Deponent further states that, from all he knows and believes, the amount due him by Mrs. Talbot, with some small amount lumber and tools, constitute about all the property he is possessed of."

Our first inquiry is, whether, assuming all the *facts* stated in this affidavit to be true, a sufficient showing is made to bring the case within the provisions of subdivision 3 or 4 of section 200 of the Code, the only provisions which are, or could be, relied upon. That section provides that a defendant may be arrested "* * * 3. When the defendant has been guilty of a fraud in contracting the debt, or incurring the obligation for which the action is brought," the balance of that subdivision being manifestly inapplicable to the present case; and subdivision 4, "When the defendant has removed or disposed of his property, or is about to do so, with intent to defraud his creditors." We are unable to discover any *fact* stated in this affidavit which would even tend to show that the defendant was guilty of any fraud, "in contracting the debt or

incurring the obligation for which the action is brought." On the contrary, the naked facts, stripped of the expressions of affiant's suspicions and beliefs, only show the ordinary case of a purchase of lumber, to be used in the construction of a building, to be paid for out of the money which the carpenter was to receive for constructing the building. No false representations, so far as we can perceive, are alleged to have been made at the time of entering into the contract for the purchase of the lumber. At the utmost, so far as this branch of the inquiry is concerned, the affidavit only shows—what, unfortunately for human nature, is too common—that, after making an honest contract, the debtor, when called upon to pay, resorts to evasions and subterfuges to evade the payment of a just debt. But that does not come within the provisions of the statute. The sole question is, whether there was any fraud *in entering into the contract,* and not whether the debtor has *subsequently* been guilty of fraud in attempting to evade compliance with his contract.

Nor do we think that any fact is stated which would bring the case within the provisions of subdivision 4 of section 200 of the Code. To do this, it is necessary that some fact should be stated, tending to show that the defendant has either removed or disposed of his property, or is about to do so, with intent to defraud his creditors, and we are unable to find any such fact. Surely the statement alleged to have been made to Farmer by the defendant, "that as soon as he got balance of his money for the building, now nearly completed, he intended to leave the place," was not sufficient to establish the fact, or even to convey the impression, that defendant had removed, or was about to remove, his property, "with intent to defraud his creditors." We do not think, therefore, that there was any sufficient showing to warrant the granting of the order of arrest in the first instance.

But even if we are in error in this, the affidavits upon which the motion to vacate the order of arrest was based, even when read in connection with so much of the affidavits served by the plaintiffs, as were in reply to those submitted by the defendant, were amply sufficient to show that there

was no ground for the arrest. Disregarding all of the statements contained in the additional affidavits served by plaintiffs, which were not in reply to the facts stated in the affidavits served by defendant, as we are bound to do under the case of *Myers* v. *Whiteheart,* 24 S. C., 196, it seems to us clear that there was no such showing made as would justify the arrest of the defendant. As to the second inquiry raised by the grounds of appeal, it seems to us that it is only necessary to read the additional affidavits served by the plaintiffs, to see that many, if not the most, of the matters therein stated are not in reply to the statements contained in the affidavits served by the defendant. This is notably true as to Viering's affidavit, which seems to relate almost entirely to matters not previously alluded to.

It was urged in the argument here, though the point is not made by any exception or ground of appeal, and, therefore, strictly speaking, not properly before us, that the terms of the order appealed from show that Judge Kershaw based his conclusion solely upon the affidavits submitted by the defendant, and did not consider the affidavits submitted by the plaintiffs, not even the first affidavit of Commander. We do not think that this position could be sustained, even if properly before us. In the first place, it is very manifest that there are either typographical errors in the order as set out in the "Case," or that there were inadvertent verbal errors in the original draft of the order, which the context affords ready means of correcting. This is manifest, not only from the use of the word "counsels" in the plural instead of the singular number, but, also, from the very first line of the order, where the words—"motion based upon the"—are clearly omitted. Supplying this omission, the order would read: "On reading and filing notice of (motion based upon the) affidavits of F. P. Cardue, J. L. Farmer, and S. Bounds, and on the pleadings and proceedings in this action," &c. This would show that the order was granted upon hearing, not only the affidavits upon which the motion was based, but also the pleadings *and proceedings,* which, of course, embraced not only the original affidavit of Commander, but also all the other affidavits.

The judgment of this court is, that the order appealed from be affirmed.